UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JONATHAN LEE JACKSON | ) | |
| 542 N. Liberty St. | ) | |
| Belleville, MI 48111, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-00938 |
| | ) | |
| SECRETARY OF DEPARTMENT | ) | |
| OF NAVY | ) | |
| 1000 Navy Pentagon, Rm. 4D652 | ) | |
| Washington, DC 20350, | ) | |
| | ) | |
| *Defendant*. | ) | |

COMPLAINT
(Review of Decisions of Board for Correction of Naval Records
and Secretarial Removal from Navy Promotion List)

**Summary**

1. This is an action by an active duty naval officer who seeks the correction of his record and, thereafter, reconsideration of a decision by the Secretary of the Navy ("the Secretary") to remove his name from a list of officers selected for promotion.

2. The Secretary removed plaintiff's name from the promotion list even though he had prevailed in material respects before the Board for Correction of Naval Records ("BCNR") and had been selected by a Special Selection Board ("SSB") on the basis of a corrected service record. The BCNR's decisions, which also denied relief in material respects, did not satisfy the standards Congress

prescribed in § 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706(2) ("APA"). The Secretary's action removing plaintiff's name from the promotion list was predicated on the BCNR's decisions and was deficient under the similar standards Congress prescribed in 10 U.S.C. § 628(g)(2). The BCNR rendered three decisions on plaintiff's case, none of them compliant with familiar principles of federal administrative law and the jurisprudence of this Circuit.

3. Commander Jackson seeks a remand with instructions (a) for the BCNR to explain and reconsider its decision and (b) if the BCNR grants the remaining record-correction relief plaintiff has requested, for the Secretary to reconsider his decision to remove plaintiff's name from the promotion list, both such actions to be accomplished by a date certain in light of the long time this case has consumed within the Navy and before the BCNR.

## Jurisdiction

4. The Court has jurisdiction under 28 U.S.C. § 1331. The statutes that give rise to federal questions are the APA and 10 U.S.C. §§ 628(g)(2) and 1552.

## Venue

5. Venue is proper in this District. 28 U.S.C. § 1391(e).

## Parties

6. Plaintiff is an active duty Commander in the U.S. Navy. He resides at the address stated in the caption. He has been a naval aviator for over 27 years. According to the BCNR, "[h]is overall record reflects exemplary service."

7. Defendant is the Secretary of the Navy. He is responsible for the overall

administration of the Department of the Navy, including the correction of na-

val records and the promotion of commissioned officers.

## Facts

### *The Admiral's Mast and the Detachment for Cause*

8.  In 2011, plaintiff was accused of violating the Navy's sexual harassment pol-
    icy and of conduct unbecoming an officer and a gentleman (using defamatory
    or derogatory language, buying beer for subordinates, and sticking an um-
    brella between a subordinate's legs). The allegations led to non-judicial pun-
    ishment ("NJP" or "Admiral's Mast") proceedings at which he was issued a
    punitive letter of reprimand.

9.  Plaintiff was also detached for cause ("DFC") from his assignment as Com-
    manding Officer of the Navy's Electronic Attack Squadron 134.

10. Plaintiff appealed the Admiral's Mast on December 19, 2011. His appeal was
    denied on January 21, 2012.

11. He was not required to show cause for retention in the Navy. Correspondence
    concerning this decision was placed in his record.

12. The adverse material in plaintiff's record rendered him non-competitive for
    promotion and he was repeatedly passed over for Captain.

### *The BCNR's First Decision*

13. Plaintiff sought relief from the BCNR in 2015. The BCNR proceedings, in-
    cluding two requests for reconsideration, took until March 6, 2020.

14. Plaintiff contended that, among other things, the findings of the Admiral's
    Mast were erroneous and based on biased accusations and a shadow inves-
    tigation and that he was prejudiced by a variety of procedural errors such as
    not being afforded a reasonable opportunity to consult with counsel, not being

4

permitted to call witnesses, not being afforded sufficient time to prepare his defense, and not being afforded an opportunity to comment on the investigation.

15. Plaintiff contended that, notwithstanding the so-called "vessel exception," he was improperly denied the right to reject non-judicial punishment and demand trial by court-martial in accordance with Article 15 of the Uniform Code of Military Justice, 10 U.S.C. § 815.

16. He also contended that it was a violation of due process to deny him the opportunity to comment on adverse information on the basis of which some of the allegations against him were found to have been substantiated.

17. He contended that Inspector General ("IG") Reports of Investigation ("ROIs") that figured in the case did not meet Navy standards and that an Equal Opportunity Report was incomplete.

18. He complained that the Admiral's Mast was designed and conducted so as to preclude him from challenging the findings of guilty and that the proceedings were infected by unlawful command influence.

19. Plaintiff asked that the IG investigations be deemed unsubstantiated and that all related paperwork be removed from his record; that the Admiral's Mast be removed from his record, along with any reference to it in his fitness reports; that all documents relating to the DFC be removed from his record; and that he be considered by an SSB for promotion to Captain, with retroactive date of rank and back pay if selected.

20. Without a hearing or even an advisory opinion from the Navy, the BCNR denied plaintiff's application on June 29, 2015.

### *The BCNR's Second Decision*

21. On September 8, 2015, through the Navy's General Litigation Division, plaintiff's (successor) counsel sought an informal remand on the ground that the BCNR's letter ruling fell impermissibly short of the minimum requirements for dealing with non-frivolous arguments. The request explained that the letter ruling was utterly lacking in detail, failed even to note what plaintiff's arguments were, much less how the BCNR had analyzed them, and would be extremely likely to lead to a remand on APA review. The request listed 13 non-frivolous issues as to which the BCNR had neglected to explain itself.

22. The BCNR took the case back to try again.

23. On February 1, 2017, the BCNR ruled a second time.

24. The BCNR expressly found that plaintiff had exhausted his remedies within the Department of the Navy.

25. The BCNR's 2017 decision went into more detail than it had in 2015, holding that it had no jurisdiction with respect to the IG investigations. Noting that plaintiff's record did not contain a copy of those investigations, it wrote, "Accordingly, the Board declined to consider corrective action with respect to the IG investigations, findings, and resultant reports."

26. The BCNR also noted that the regulations governing IG investigations do not provide an appeals process for IG reports, "but concluded that the final report of the IG and the procedures following its signature, fell beyond the scope of the

BCNR's authority and were outside the cognizance of the Board."

27. Because nothing in plaintiff's record directly related to the IG report itself, and given the IG's role "and the lack of authority for the Board to correct the distinct and independent final report of [the] Navy IG, the Board declined to grant relief on [Commander Jackson's] request to deem all IG investigations into alleged misconduct unsubstantiated, and to strike all adverse paperwork association with the IG investigation from [his] record."

28. The BCNR found that the Admiral's Mast was without procedural error, but that its timing was unjust. It "noted the lack of opportunity for [plaintiff] to review and respond to the substantiated IG allegations prior to the Admiral's Mast," and "that the fitness report for the period ending 10 December 2011, contained reference to substantiated allegation for which [he] did not have sufficient opportunity to respon[d] and rebut prior to their adjudication at Admiral's Mast."

29. The BCNR recommended (a) removal of the documentation relating to the Admiral's Mast, fitness report, decision not to require plaintiff to show cause for his retention, and DFC; (b) setting aside his passovers for promotion to Captain; and (c) referral of his record to an SSB for remedial promotion consideration.

30. The Secretary's delegate approved the limited corrective action the BCNR recommended.

31. Plaintiff tried without success to persuade the Navy IG ("NAVIG") to correct the ROIs.

### *The Special Selection Board and the Removal from the Promotion List*

32. Plaintiff's record, as corrected by the BCNR, was referred to an SSB, which, later in 2017, recommended him for promotion after comparing his corrected record with those of other naval officers.

33. On March 21, 2018, however, plaintiff was notified that the Navy was considering withholding his promotion on the basis of one of the IG investigations.

34. Plaintiff responded on April 5, 2018, reiterating numerous serious deficiencies in that ROI about which he had already complained:

(a)  General incompleteness;

(b)  Interviews conducted by the Pacific Fleet IG did not comply with the protocol set forth in the Naval IG Investigations Manual, resulting in a flawed investigation;

(c)  The investigator ignored or failed to develop relevant information from witnesses undermining the complainant's credibility or tending to exonerate plaintiff;

(d)  The investigator failed to interview witnesses who had relevant first-hand information and were readily available;

(e)  The investigator presented witness testimony out of context and without sufficient corroboration, in order to reach a predetermined conclusion;

(f)  The investigator failed to evaluate or even discuss witness credibil-ity;

(g)  The investigator treated uncorroborated assertions as fact;

(h)  One complainant improperly influenced others before and during the investigation;

(i)  Plaintiff's conduct did not violate the Navy regulation prohibiting sexual harassment in the form of a hostile work environment;

(j)  He did not assault a named junior officer;

(k)  He did not use derogatory or defamatory language to or about sub-ordinate officers;

(l)  He did not improperly restrict subordinates from communicating with the IG; and

(m) He was not afforded an opportunity to comment on the allegation that he had restricted protected communications.

35. Concerning the allegation in the ROI that plaintiff had poked a junior officer with an umbrella to see if he was asleep, as he was pretending to be, plaintiff's submission noted that, quite simply, there is no "there" there and no reason to withhold his promotion on that basis. He explained that the matter had been fully addressed in a sworn statement from the officer in question, and that, as the putative "victim," that officer's unrebutted account is dispositive. Plaintiff reported that he spoken with the officer, who said he would welcome a telephone call if the Navy had any questions concerning the matter. Plaintiff provided the officer's telephone number, but no one called him.

36. The junior officer repeatedly disputed the account of events presented in the ROI: "I didn't of course like being bothered in this manner, but in no way do I feel I was assaulted or sodomized." "I was shocked and saddened that it was classified as an assault and I think that's a gross injustice that should be rectified should be rectified." "I continue to offer the appellate officials any help they need to make sure the truth really comes out in regards to the incidents that directly affected me." "I was NOT sexually assaulted in any way and the continued suggestions that I was has subjected me to great embarrassment. I told the IG what I felt about that incident. I have stated numerous times that I was not assaulted and still my comments were taken out of context and mischaracterized." "Unfortunately, my testimony as a witness and "victim" has been mischaracterized and misquoted by the IG and I write this letter to you as my previous attempts to tell my side of the story have gone unheard. I feel let down by the IG and the Flag Officer corps and

defamed by the inaccuracies." "CDR Jackson has been nothing but an exemplary officer his entire career and I count him as the greatest influence in my Navy career." "I knew CDR Jackson was just joking and did not intend to make me uncomfortable." "I hold CDR Jackson in the highest regard as a leader and a mentor. I consider him the best commander I have served with in the United States Navy."

37. Nonetheless, on April 19, 2018, plaintiff's superior, the Chief of Naval Research, recommended against the promotion. His endorsement was internally inconsistent. On the one hand, it concluded that "CDR Jackson's actions during the events outlined in the subject IG investigation were contrary to the Navy Ethos, and in my opinion, preclude him from promotion to Captain in the United States Navy." On the other hand, it stated:

> 5. *Inconsistencies and irregularities in personal accounts and statements between the IG investigation and the BCNR- supporting material [that plaintiff submitted] are very concerning.* This creates a dilemma for anyone looking at this case attempting to characterize CDR Jackson's judgment, behavior, and the associated ready room climate while in command of VAQ-134 [Electronic Attack Squadron 134]. I empathize with CDR Jackson, in that *the IG investigation failed to capture a more complete portrayal of the alleged circumstances, by incorporating a broader scope of witnesses – those who refuted the allegations subsequent to the IG investigation and associated NJP* [Admiral's Mast]. *In my opinion, a thorough review of this entire matter is warranted.* [Emphases added.]

38. On April 21, 2018, plaintiff submitted a complaint about the same ROI deficiencies through the DoD IG hotline. The DoD IG closed the case without explanation on May 29, 2018.

39. On September 28, 2018 the Chief of Naval Operations ("CNO") forwarded the

file to the Secretary. His memorandum recited, among other things, that the Chief of Naval Research's endorsement "notes inconsistencies amongst the NAVIG investigation, the BCNR materials, and CDR Jackson's statements that call into question CDR Jackson's fitness for promotion." That statement does not accurately reflect the language quoted above from the endorsement. Indeed, the inconsistencies were cited not for the purpose of calling plaintiff's fitness into question, but for calling into question the basis for the adverse action. The CNO's endorsement made no reference to the Chief of Naval Research's recommendation that "a thorough review of this entire matter is warranted." It also accused plaintiff of having committed an assault on a subordinate, based on the IG report, even though that charge was not the basis for his having been punished at Admiral's Mast.

40. On October 31, 2018, the Secretary removed plaintiff's name from the promotion list. His approval consisted of his signature and the date; he appended no explanation. Nor did his approval refer to the Chief of Naval Research's recommendation for a thorough review. So far as plaintiff knows, that recommendation has never been acted on.

41. The Navy never took any steps to address the deficiencies plaintiff identified in the IG investigations before removing his name from the promotion list. No one acted on his request, for example, that a key percipient witness referred to above be contacted.

### The BCNR's Third Decision (if the voting members ever saw it)

42. On February 6, 2019, still hoping to avoid litigation, plaintiff again

requested reconsideration, pointing out the deficiencies in the BCNR's second decision, including its claim that it lacked jurisdiction over NAVIG investigative reports.

43. The voting members of the BCNR met in executive session on January 23, 2020.

44. On March 6, 2020, the BCNR's Deputy Director, who was not a voting member of the BCNR panel that considered the case, sent plaintiff a letter denying the second request for reconsideration.

45. Requests for reconsideration that qualify under the BCNR's regulations must be decided by the voting members rather than the staff. *Lipsman v. Secretary of the Army*, 335 F. Supp.2d 48, 53-55 (D.D.C. 2004).

46. The voting members did not sign the Deputy Director's letter.

47. On March 19, 2020, plaintiff's counsel emailed the Deputy Director to ask whether the voting members ever saw his March 6, 2020 letter, either before or after he signed it.

48. The BCNR did not respond to that email.

49. The Deputy Director's letter states that the BCNR had previously "incorrectly determined that it lacked jurisdiction to correct an error or remove an injustice" in an IG ROI. Nonetheless, his letter recites that the BCNR refused to grant any relief beyond that previously awarded:

> The Board notes, however, that determinations of whether corrective action is warranted in such cases—and the form of that action—are matters within the Board's discretion, and it declines to exercise that discretion to do so in this case.

First, the Board noted that, even if there is an error or injustice in the NAVIG ROI, section 1552(a) permits the Secretary to decline to take corrective action, and the Board declines to do so here, because of the significant institutional costs related to the importance of maintaining unamended law enforcement ROIs. Amendment of such records would impose an impossible administrative burden by requiring investigations to be continually reinvestigated, which is one reason NAVIG ROIs are exempted from the amendment provisions of the Privacy Act. *See* 32 C.F.R. § 701.128(i)(4)(ii). Moreover, the purpose of an investigation is not to prove or disprove an allegation of criminality, or to establish the guilt or innocence of an individual. In contrast, a ROI is merely the repository for facts tending to prove or disprove an allegation, gathered through observation, interviews, and examination of documentary or physical evidence, obtained during the course of an investigation.

The Board noted, in a related vein, that once an individual is the subject of an investigation ("titled"), that individual's information will remain in the database ("indexed"), unless there is mistaken identity or it is determined that no credible information existed at the time of the titling and indexing. If a person believes they were incorrectly titled as the subject of an investigation, they may appeal to the Department component head to obtain a review of the decision (DoD Inspector General). The Board noted that there is no evidence that you have exhausted this potential remedy. Moreover, under the "credible information" titling and indexing standard applied by DoD components (including the NAVIG) authorized to conduct criminal investigations, the Board determined that the evidence you provided was insufficient to show that there was not [*sic*; presumably should read "no" as above] credible information in your case. The Board thus concluded that removal of your name from the NAVIG ROI or any other DON or DoD investigation databases is not warranted. [Bracketed matter inserted.]

Furthermore, the Board noted that the ROI is not maintained in your OMPF [Official Military Personnel File], and that all adverse administrative actions—including removal of your name from the promotion list—based upon the information contained in the ROI afforded you an opportunity to review the ROI and provide matters in rebuttal for the SECNAV's consideration.

50. The Code of Federal Regulations section cited in the Deputy Director's letter is

found in the subpart of the Department of the Navy Privacy Program that sets

forth and explains Privacy Act exemptions for specific Navy systems of records.

*See* 32 C.F.R. subpt G. Section 701.128(i)(4)(ii) exempts IG investigations

from subsections (d) and (f) of the Privacy Act, 5 U.S.C. §§ 552a(d) & (f).

51. The full text of the explanation from which the Deputy Director quoted is:

> *Reasons* (ii) [for the exemption] [f]rom subsections (d) and (f) because ac-
> cess to the records would inform individuals of the existence and nature of
> the investigation; provide information that might result in the concealment,
> destruction, or fabrication of evidence; possibly jeopardize the safety and
> well-being of informants, witnesses and their families; likely reveal and ren-
> der ineffectual investigatory techniques and methods and sources of infor-
> mation; and possibly result in the invasion of the personal privacy of third
> parties. Access could result in the release of properly classified information
> which could compromise the national defense or disrupt foreign policy.
> Amendment of the records would interfere with the ongoing investigation
> and impose an impossible administrative burden by requiring investigations
> to be continually reinvestigated.

52. The BCNR does not administer the Privacy Act and plaintiff had not invoked it

in seeking relief from the BCNR.

53. The BCNR's regulations state that "[t]he Board is not an investigative body," 32

C.F.R. § 723.2(b), and plaintiff did not ask that it conduct an investigation.

54. The BCNR's assumption that plaintiff had not sought relief from the DoD IG

disregarded the finding in its second decision that there is no appeal process for

IG reports. *See* ¶ 26 *supra*.

55. In any event, the assumption was mistaken: plaintiff had sought relief from the

DoD IG. *See* ¶ 38 *supra*.

56. The Department of Defense regulation on titling and indexing in criminal inves-

tigations provides that "[j]udicial or adverse administrative actions will not be taken

based solely on the existence of a titling or indexing record in a criminal investigation." Dep't of Defense Instruction No. 5505.07 § 1.2.f., at 3 (Feb. 28, 2018).

57. In contrast to the "no credible information" standard for titling and indexing ROIs cited by the Deputy Director, the Department of Defense regulation on military officer promotions that require Senate confirmation requires, *inter alia*, that "adverse information" be "credible," and that "[t]o be credible, the information must be resolved and supported by a preponderance of the evidence." Dep't of Defense Instruction No. 1320.04 (Jan. 3, 2014), Encl. (4), ¶ 1.a, at 16.

58. In contrast, the evidentiary standard prescribed in the BCNR's regulations is "probable material error or injustice." 32 C.F.R. § 723.3(e)(2).

59. DoD Instruction 1320.04 also states (Enclosure 4, § 1.a.(1)(b)) that even if information is "credible," it is not "considered adverse" if it concerns [m]inor infractions without negative effect on an individual or the good order and discipline of the organization that: . . . *2*. Did not result in more than a non-punitive rehabilitative counseling administered by a superior to a subordinate."

60. The ROI is not "adverse" within the meaning of this regulation because the BCNR's second decision set aside the Admiral's Mast.

61. Promotions to Captain in the U.S. Navy are subject to Senate confirmation. 10 U.S.C. § 624(c).

## Cause of Action

62. The averments of ¶¶ 1-61 are incorporated herein by reference.

63. The BCNR's decisions are arbitrary and capricious, an abuse of discretion,

unsupported by substantial evidence on the record as a whole, and contrary to law because the board—

(a) failed to rule on non-frivolous allegations, contrary to *Frizelle v. Slater*, 111 F.3d 172 (D.C. Cir. 1997);

(b) mistakenly analyzed the case as if it arose under the Privacy Act rather than the record-correction statute;

(c) relied on an inapposite Privacy Act exemption regulation for the unfounded and irrelevant theory that exercising its authority under § 1552 to correct error and remove injustice would "require[e] investigations to be continually reinvestigated";

(d) abdicated its duty to exercise its authority over ROIs on the basis that they are "merely the repository for facts tending to provide or disprove an allegation," despite the fact that the disputed ROI was in fact relied on by the Navy in connection with the removal of plaintiff's name from the promotion list;

(e) proceeded on the assumption that plaintiff had failed to exhaust a potential DoD IG remedy even though (i) it had previously said there was no review process; (ii) it did not afford him fair notice that it was making that assumption, and (iii) that assumption was, in any event, false;

(f) unlawfully imposed on plaintiff a duty to demonstrate that there was "no credible evidence" to support the IG report, thereby (i) abdicating its own independent duty as a "board of civilians" under § 1552 to correct error or remove injustice, and (ii) imposing an unwarranted burden of proof on plaintiff contrary to and in excess of the "probable material error or injustice" standard prescribed in the BCNR's regulations and invoked in its decision;

(g) relied on the ROI as a basis for administrative action, in violation of the Department of Defense titling and indexing regulation;

(h) failed to explain its ruling in light of the record as a whole, thereby thwarting judicial review; and

(i) voting members apparently never saw the Deputy Director's March 6, 2020 letter.

64. The removal of plaintiff's name from the promotion list is arbitrary and capricious, an abuse of discretion, unsupported by substantial evidence on the record as a whole, a result of material error of fact and material administrative error, and otherwise contrary to law because it (a) rests on the BCNR's legally

deficient first and second decisions; (b) relies on the ROI as a basis for taking administrative action; and (c) fails to address and resolve non-frivolous material issues.

**Relief Requested**

65. Plaintiff prays that the Court—

   (a) remand his case to the BCNR for further proceedings that do not suffer from the errors set forth above and in which an examiner and voting members with no prior involvement will consider the case, such proceedings to be completed and the record thereof provided to plaintiff and submitted to the Court within 60 days of the remand;

   (b) direct the Secretary to reconsider, without reliance on the ROI, whether to restore plaintiff's name to the promotion list if, on remand, the BCNR has granted further relief, such reconsideration to be completed and the record thereof provided to plaintiff and submitted to the Court within 60 days of the BCNR's decision on remand; and

   (c) grant such other and further relief as may in the circumstances be just and proper.

Respectfully submitted,


Eugene R. Fidell
(D.C. Bar No. 112003)
Feldesman Tucker Leifer Fidell LLP
1129 20th St., N.W., Suite 400
Washington, DC 20036
(202) 256-8675 (mobile)
efidell@ftlf.com

*Attorney for Plaintiff*

April 2020

Serve:          Attorney General of the United States
                United States Attorney for the District of Columbia

Secretary of the Navy