UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | ) | |
| **JONATHAN LEE JACKSON**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-cv-0938 (TSC) |
| | ) | |
| **SECRETARY OF DEPARTMENT OF NAVY,** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Jonathan Lee Jackson brings this action against the Secretary of the Navy,

alleging that the Board for Corrections of Naval Records and the Secretary violated the

Administrative Procedure Act ("APA").  Defendant moved for summary judgment, ECF No. 12,

Def. Mot., and Plaintiff cross-moved for summary judgment, ECF No. 14, Pl. Mot. and Opp'n.

For the reasons set forth below, the court will GRANT Defendant's motion for summary

judgment and DENY Plaintiff's cross-motion for summary judgment.

## I.    BACKGROUND

Plaintiff is an active-duty commander in the U.S. Navy.  ECF No. 1, Compl. ¶ 6.  While

serving in a command billet in 2011, he was accused of violating the Navy's policy against

sexual harassment and of conduct unbecoming an officer and a gentleman, allegations that the

Navy Inspector General ("NAVIG") substantiated in a report of the investigation ("ROI").  Pl.

Mot. and Opp'n at 3-4; ECF No. 24, Joint Appendix of the Administrative Record ("AR") at 10.

As a result, Plaintiff was administered non-judicial punishment and was issued a formal Letter of

Reprimand.  AR at 10.  Plaintiff was also detached for cause from his assignment as

Commanding Officer of the Navy's Electronic Attack Squadron 134.  Compl. ¶ 9.  His appeal of his punishment was denied.  *Id.* ¶ 10.

Any service member who believes their military file contains an error may request that the Secretary of the military department correct it.  *See* 10 U.S.C. § 1552.  Secretaries generally rely on civilian boards to review and act on requests for correction.  *Id.* § 1552(a)(1).  The Secretary of the Navy does so through the Board for Correction of Naval Records ("the Board"), 32 C.F.R. § 723.2(a), which is composed of civilians and is vested with authority to "correct any military record when it considers it necessary to correct an error or remove an injustice," 10 U.S.C. § 1552.

Believing that the ROI and related documents were preventing his promotion to Captain, Plaintiff, in December 2014, sought relief from the Board, requesting that it find the NAVIG's investigation "unsubstantiated," that all related paperwork be removed from his record, that any record of his punishment be removed from his fitness reports, and that he be considered by a Special Selection Board ("SSB") for promotion to Captain, with retroactive date of rank and back pay.  Compl. ¶ 19.  The Board denied Plaintiff's requests.  AR at 11-12.

Plaintiff then sought an informal remand of the Board's decision from the Office of the Navy Judge Advocate General, contending that the Board's decision did not provide sufficient detail to justify its decision.  *Id.* at 55-57.  The Navy's General Litigation Division granted Plaintiff's request for a remand and the Board reconsidered its initial decision.  On February 1, 2017, the Board issued a second decision recommending that the Secretary of the Navy (1) remove documentation of Plaintiff's punishment from his record, and (2) refer Plaintiff's corrected record to a SSB for remedial promotion consideration.  *Id.* at 14.  The Secretary approved the recommendations.  *Id.* at 14.  The Board, however, declined to act on Plaintiff's

request that the IG investigations be deemed unsubstantiated and that all related paperwork be removed from his record because it determined it lacked jurisdiction to correct those records. *Id.* at 13.  Plaintiff's record, as corrected, was referred to an SSB, which recommended him for promotion. *Id.* at 14.

Despite the SSB's recommendation that Plaintiff be promoted, the Secretary withheld Plaintiff's nomination for promotion, referencing the ROI, which "substantiated two allegations against" Plaintiff. *Id.* at 21-24.  Plaintiff responded with documentation alleging deficiencies in the NAVIG investigation. *Id.* at 26-29.  Plaintiff's chain of command reviewed that documentation and, in a memo directed to the Commander of Navy Personnel Command, recommended against the promotion, explaining that despite certain inconsistencies in personal accounts and witness statements, there were elements in the ROI and sworn witness interview transcripts that precluded promoting Plaintiff. *Id.* at 30-31.  The Chief of Naval Operations then reviewed the ROI, the Board's first two decisions, Plaintiff's submitted documentation, and the recommendation submitted by Plaintiff's chain of command. *Id.* at 36-37.  The Chief of Naval Operations then wrote to the Secretary recommending against Plaintiff's promotion because Plaintiff "did not demonstrate the exemplary conduct expected from commanding officers and others in positions of authority." *Id.*  On October 31, 2018, the Secretary authorized the removal of Plaintiff's name from the promotion list. *Id.* at 38.

On February 6, 2019, Plaintiff—for the third time—sought the Board's review.  He asked that the ROI be expunged from his naval record or, in the alternative, that the Board change the ROI's conclusion to "unsubstantiated." *Id.* at 9.  He further requested that "the Secretary's removal of his name from the promotion list be set aside and that his promotion go forward." *Id.* at 10.  The Board met on January 28, 2020, and all three voting members voted to deny

Plaintiff's request. *Id.* at 5-8. They recorded their votes on a "brief sheet," establishing the

chronology of relevant facts and the justification for their vote. *Id.* at 5-8. On March 6, 2020,

the Board's Deputy Director sent Plaintiff a letter further explaining the rationale behind the

Board's January 28, 2020 decision. *Id.* at 1-4.

On April 9, 2020, Plaintiff filed this lawsuit, alleging that the Board's refusal to grant his

requested relief and the Secretary's decision to remove him from the promotion list violated the

APA. *See* Compl. ¶¶ 63-64.

## II.     LEGAL STANDARD

### A. <u>Motion for Summary Judgement</u>

Under Federal Rule of Civil Procedure 56, summary judgment must be granted when "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 247 (1986); Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary

judgment is properly granted against a party that "fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." *Celotex,* 477 U.S. at 322. To determine which facts are "material," a

court must look to the substantive law on which each claim rests. *Anderson,* 477 U.S. at 248. A

"genuine issue" is one whose resolution could establish an element of a claim or defense and

therefore affect the outcome of the action. *Celotex,* 477 U.S. at 322. In ruling on a motion for

summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor

and accept the nonmoving party's evidence as true.  *Anderson,* 477 U.S. at 255.

## B.  Judicial Review Under the APA

On a motion for summary judgment in an APA case, the court must set aside any agency

action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law."  5 U.S.C. § 706(2).  The court's review is "highly deferential" and begins with a

presumption that the agency's actions are valid.  *Envt'l. Def. Fund, Inc. v. Costle*, 657 F.2d 275,

283 (D.C. Cir. 1981).  The court is "not empowered to substitute its judgment for that of the

agency," *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), but instead

must consider only "whether the agency acted within the scope of its legal authority, whether the

agency has explained its decision, whether the facts on which the agency purports to have relied

have some basis in the record, and whether the agency considered the relevant factors,"

*Fulbright v. McHugh*, 67 F. Supp. 3d 81, 89 (D.D.C. 2014) (quoting *Fund for Animals v. Babbitt*,

903 F. Supp. 96, 105 (D.D.C. 1995)).  The plaintiff bears the burden of establishing the

invalidity of the agency's action.  *Envt'l. Def. Fund, Inc.*, 657 F.2d at 283 n.28.

While military correction board decisions are reviewable under the APA, "they are also

entitled to a great deal of deference."  *Buckingham v. Mabus*, 772 F. Supp. 2d 295, 299 (D.D.C.

2011); *see also Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000) (review is "unusually

deferential"); *Cargill v. Marsh*, 902 F.2d 1006, 1008 (D.C. Cir. 1990) ("heightened deference");

*Viles v. Ball*, 872 F.2d 491, 495 (D.C. Cir. 1989) (review is "exceptionally deferential").  "This

deferential standard is calculated to ensure that the courts do not become a forum for appeals by

every soldier dissatisfied with his or her rating, a result that would destabilize military command

and take the judiciary far afield of its area of competence."  *Cone*, 223 F.3d at 793.  The court

Case 1:20-cv-00938-TSC   Document 27   Filed 10/27/21   Page 6 of 12

need only determine "whether the Secretary's decision making process was deficient, not

whether his decision was correct." *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir.

1989). A plaintiff must overcome a strong presumption that the military administrators

discharged their duties correctly, lawfully, and in good faith. *Frizelle v. Slater*, 111 F.3d 172,

177 (D.C. Cir. 1997). To rebut this presumption, "the plaintiff has the burden of showing 'by

cogent and clearly convincing evidence' that the decision was the result of a material legal error

or injustice." *Doyle v. England*, 193 F. Supp. 2d 202, 207 (D.D.C. 2002).

### III.    ANALYSIS

#### A.  The Board's Decision Denying Plaintiff's Requested Relief[1]

The Board's refusal to amend or expunge the ROI was rooted in the Board's statutory

discretion to correct a naval record only when it "considers it necessary to correct an error or

remove an injustice." 10 U.S.C. § 1552(a); AR at 1. The Board's "brief sheet" summarized the

relevant facts and explained that granting Plaintiff's request would come with a "significant

institutional cost[] related to the importance of maintaining" unamended law enforcement ROIs.

AR at 7. In his March 6, 2020 letter, the Board's Deputy Director further explained why the

Board found that "the evidence submitted was insufficient to establish the existence of probable

---

[1] In two paragraphs of his Complaint, and one paragraph of his motion and opposition, Plaintiff indicates that he challenges all three of the Board's "decisions." *See* Compl ¶¶ 2, 63; Pl. Mot. and Opp'n at 1. Aside from Plaintiff's use of the plural "decisions," he only advances arguments challenging the Board's third decision, rendered in January 2020. *See* Compl. ¶ 63; Pl. Mot. and Opp'n at 20-25, 27. Consequently, Plaintiff has waived his arguments challenging the Board's first two decisions. *See also City of Waukesha v. EPA*, 320 F.3d 228, 250 n.22 (D.C. Cir. 2003) (arguments not developed in briefs are waived). And, in any event, Plaintiff has not provided sufficient evidence to overcome his burden of establishing the invalidity of those first two agency actions. Accordingly, the court, like Plaintiff, focuses its attention on the validity of the Board's third decision.

material error or injustice."  AR at 1-4.  The court operates from a strong presumption that the

Board did so correctly, lawfully, and in good faith.

Plaintiff attempts to overcome the "strong presumption" in favor of agency action by

alleging that the Board (1) failed to consider certain deficiencies with the NAVIG's

investigation, and (2) based part of its decision on the incorrect assumption that Plaintiff had not

exhausted all administrative remedies and on a heightened evidentiary standard.  Plaintiff,

however, fails to support either allegation with "cogent and clearly convincing evidence that the

decision was the result of a material legal error or injustice."  *Doyle*, 193 F. Supp. 2d at 207.

### i.  The Board Properly Considered Plaintiff's "Non-Frivolous" Arguments

A Board decision runs afoul of the APA when it does not consider an argument that does

not appear "frivolous" on its face and which "could affect the Board's ultimate disposition."

*Roberts v. Harvey*, 441 F. Supp. 2d 111, 119 (D.D.C. 2006) (quoting *Frizelle v. Slater*, 111 F.3d

172, 177 (D.C. Cir 1997)).  The argument in question, here, is Plaintiff's contention that the

NAVIG's investigation was deficient in thirteen different ways.

While Plaintiff is correct that the Board did not specifically respond to each of his alleged

deficiencies with the NAVIG's investigation, his argument ultimately falls short.  The Board

assumed the veracity of Plaintiff's arguments and balanced any errors or injustices against other

institutional considerations.  *See* AR at 3.  As the Board explained, "even if there [was] an error

or injustice in the NAVIG ROI," it was not appropriate to expunge the ROI because of "the

importance of maintaining unamended law enforcement ROIs," the Board's desire to avoid the

"administrative burden" of continuously evaluating past NAVIG investigations, and the fact that

the ROI is meant to be a "repository of facts" gathered through the course of an investigation.

*Id.* at 3, 7.  As the D.C. Circuit has explained, even when there are undisputed errors or conceded

injustices, the Board may have reasons for refusing to alter an applicant's military record.  *Kreis*,

866 F.2d at 1514.  For example, in reaching its decision, the Board may—as it did here—balance

errors and injustices against "institutional costs."  *Id.*  Such balancing is not a deficient decision-

making process that warrants remand.  To the contrary, a Board is "well within its discretion" to

do so, and its balancing decision must be "free of judicial second-guessing."  *Id*.  The court

therefore refuses to disrupt the Board's balancing decision.

### ii.   The Board's Decision-Making Process Relating to the "Titling" and "Indexing" of a Criminal Investigation Was Not Deficient

Plaintiff's next grievance concerns the portion of the Board's decision related to "titling"

and "indexing."  "Titling" and "indexing" refer to the labelling and maintaining of records

produced in a criminal investigation by the Department of Defense Criminal Investigative

Organization.[2]   Plaintiff did not ask the Board to change the "titling" or "indexing" of any

criminal investigation records.  Nonetheless, the Board raised the prospect of whether such relief

was warranted because, Defendant contends, the Board wanted to be "thorough."  ECF No. 21,

Def. Opp'n and Reply at 10, 12.  The Board ultimately found that it did "not appear that"

Plaintiff had exhausted all available administrative remedies relating to "titling" and "indexing,"

and that in any event, Plaintiff failed to satisfy the "credible information" standard applicable to

"titling" and "indexing" challenges.  AR at 4, 7.

Plaintiff argues that the Board's "titling" and "indexing" decision-making process was

unlawful because the Board incorrectly assumed Plaintiff failed to exhaust all administrative

---

[2] "Titling" refers to the title block of a criminal investigation where the subject's name and identifying information are recorded when the Department of Defense Criminal Investigative Organization has "credible information" that the subject of an investigation committed a criminal offense; "indexing" refers to the maintenance of criminal investigation records in the Defense Central Index of Investigations, a searchable database.  *Code v. McCarthy*, 959 F.3d 406, 409-10 (D.C. Cir. 2020).

remedies and applied a heightened evidentiary standard.  According to Plaintiff, the NAVIG

investigation was not a criminal investigation, so the Board should not have applied the "credible

information" standard.  *See* Pl. Mot. and Opp'n at 22-23.  Defendant argues that Plaintiff did not

submit any evidence that he had exhausted all available administrative remedies, and in any

event, the Board considered whether a correction to the "titling" or "indexing" of any criminal

records was warranted under the applicable standard set forth in DoD instructions.  Def. Opp'n

and Reply at 10-11.  The court agrees with Defendant.

First, Plaintiff did not submit any evidence to the Board showing that he exhausted

administrative remedies relating to a "titling" or "indexing" correction, so the Board's finding

was consistent with the record before it.  Moreover, the Board again gave Plaintiff the benefit of

the doubt and assessed whether a "titling" or "indexing" change was warranted, regardless of

whether Plaintiff had exhausted his administrative remedies.  *See* AR 4, 7.

Second, the Board applied the appropriate standard set forth in Department of Defense

instructions for determining whether "titling" or "indexing" corrections to criminal investigation

records are warranted.  A correction to the "titling" or "indexing" of an investigation is

appropriate if there is "mistaken identity or it is later determined no credible information existed

at the time of titling and indexing."  DoDI 5505.07 at § 1.2(d).  The Board applied this standard

and explained that a correction to the "titling" or "indexing" of Plaintiff's ROI was not warranted

because Plaintiff failed to show a lack of "credible information" at the time of the titling and

indexing of the NAVIG ROI.  AR at 4, 7-8.  This was the correct standard to apply in the

"titling" and "indexing" context.  *See Escobedo v. Green*, 602 F. Supp. 2d 244, 250 (D.D.C.

2009) (explaining that the Board properly applied the "credible information standard under DoD

9

Instruction 5505.7" to determine whether to remove the plaintiff's name and identifying information from the ROI and Defense Central Index of Investigations).

Plaintiff's argument that it was wrong to apply the "credible information" standard because the NAVIG investigation was not a criminal investigation is unavailing. If Plaintiff is correct that the NAVIG investigation was not a criminal investigation, then he would not have been "titled" in a criminal investigation, there would be no records "indexed" in the Defense Central Index of Investigations database, and thus there would be no records to which the Board could make "titling" and "indexing" changes. In other words, there would be no relief the Board could provide and "it would be senseless to vacate and remand for reconsideration." *PDK Labs Inc. v. United States DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004). The court need not determine whether there was a criminal investigation or not because, either way, remand is not appropriate.

B. **Secretary of Navy's Decision to Remove Plaintiff from Promotion List**

Plaintiff also challenges the Secretary's decision to remove Plaintiff from the promotion list. According to Plaintiff, the Secretary erred in basing his decision on the ROI, because (1) the ROI included information that the Board wrongly refused to expunge, and (2) DoD regulation provides that "[j]udicial or adverse administrative actions will not be taken based solely on the existence of a titling or indexing record in a criminal investigation." DoDI 5505.07 § 1.2(f). Plaintiff therefore requests that "if, on remand" from the court, the Board grants Plaintiff's requested relief, then the court should also "direct the Secretary to reconsider" his decision to remove Plaintiff's name from the promotion list. Compl. ¶ 64; Pl. Mot. and Opp'n at 1, 27.

As an initial matter, the court cannot review the Secretary's past decision to remove Plaintiff's name from the promotion list. By statute, the President has the authority to remove an officer's name from a "promotion list," 10 U.S.C. § 629(a), authority that in turn was delegated

to the Secretary, DoDI 1320.14, encl. (3), ¶ 5(d)(5)(b)(3) (Dec. 11, 2013).  The statute governing

removal of an officer from a promotion list "provides no framework or standard 'against which

to judge the agency's exercise of discretion.'"  *Reilly v. Sec'y of Navy*, 12 F. Supp. 3d 125, 141

(D.D.C. 2014) (quoting *Sierra Club*, 648 F.3d 848, 855 (D.C. Cir. 2011)).  Because "such a

standard is lacking, the removal decision is committed to the sound discretion of the executive

branch and is therefore unreviewable under the APA."  *Id.* at 141-42; *see also Nation v. Dalton*,

107 F. Supp. 2d 37, 44 (D.D.C. 2000) (holding that the Secretary of the Navy's removal of a

reserve officer from a promotion list is committed to the Secretary's discretion by virtue of

authority delegated to him by the President and is unreviewable under the APA).

In any event, neither of Plaintiff's arguments are persuasive.  First, as explained above,

Plaintiff has not shown that a remand to the Board is warranted.  Accordingly, his request that

Defendant reconsider his decision "after the [Board's] decision on remand" will be denied.  Pl.

Mot. and Opp'n at 27.  Second, Plaintiff's argument that the Secretary wrongly based his

decision on the "titling" or "indexing" in a criminal investigation also fails.  Plaintiff himself

argues that the NAVIG investigation was not a criminal investigation, and he has not provided

any evidence that the Secretary based his decision on the "titling" or "indexing" in some separate

criminal investigation.

Consequently, the court cannot and will not direct the Secretary to reconsider his decision

to remove Plaintiff from the promotion list.

### IV.     CONCLUSION

For the reasons explained above, the court will GRANT Defendant's motion for

summary judgment and DENY Plaintiff's cross-motion for summary judgment.

11

Date:  October 27, 2021

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge